IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| KEIKO TANAKA, | * | |
| | * | |
| Petitioner, | * | Civil Action File |
| | * | No.: 1:23-CV-02580-MHC |
| v. | * | |
| | * | |
| JACOMA MONTFORD, | * | |
| | * | |
| Respondent. | * | |
| | * | |

**TRIAL BRIEF**

COMES NOW, JACOMA MONTFORD, Respondent in the above-styled matter, and files this, his Trial Brief, and respectfully shows this Court as follows:

**I.  FACTUAL BACKGROUND**

Petitioner seeks the return of the Parties' minor child, M.M. (hereinafter referred to as the "minor child") to Japan pursuant to the Hague Convention on the Civil Aspects of International Child Abduction (herein the "Hague Convention" or "Convention") and the International Child Abduction Remedies Act (22 U.S.C. § 9001 et. seq., hereinafter "ICARA").  The Parties were married in Japan, and the minor child was born in Japan in 2016.  The Parties and the minor child resided together in Japan until July 27, 2022.

Page 1 of 10

The Parties also have an older child, Z.M. (hereinafter referred to as "Brother") who was born in 2006. The Respondent and the children are United States citizens. The Parties met while in college in the United States. They then married in Japan and settled there. Throughout the Parties' marriage, the Parties discussed returning to the United States to reside with the children. In fact, Brother returned to the United States in 2022 to finish out his high school career. Brother was originally scheduled to come back in 2021 but stayed an additional year at Petitioner's request.

In 2022, the Parties marriage was failing, and the Respondent returned to the United States. He brought the Minor Child with him with the consent of the Petitioner and as the Parties had discussed throughout their marriage. The Parties discussed the filing for divorce, and only when the Parties could not agree on issues in the divorce, did the Petitioner state that she wanted the Minor Child to return to Japan. Petitioner told the Respondent that she wanted the Minor Child to stay in Japan one more year before coming to the United States to reside permanently.

## II.  ARGUMENT AND CITATION TO AUTHORITY

A case arising under the Hague Convention demands a limited inquiry into only the question of whether a minor child must be returned to his country of habitual residence. First, the Petitioner bears the burden of proving, by a preponderance of the evidence, a prima facie case for return of the child. Once this is satisfied, the burden shifts to the Respondent to show that one of the enumerated affirmative defenses justifies a decision to not return the child. Respondent concedes that the Petitioner has made out a *prima facie* case for the return of the Minor Child, and therefore, the Respondent focuses on the affirmative defenses which he puts forth showing the Court that the Minor Child should not be returned.

### A.  *The Consent or Acquiescence Defense*

One of the affirmative defenses under the Convention is the "consent or acquiescence" defense. Article 13 provides that the Court is not bound to return a child where the left-behind parent "consented to or subsequently acquiesced in the removal or retention." Hague Convention Art. 13(a). Respondent has the burden of proving, by a preponderance of the evidence, that Petitioner affirmatively consented or acquiesced to the Minor Child permanently residing in the United States. *Berenguela-Alvarado*, 950 F.3d at 1360 (reversing and remanding a district

court opinion which placed the burden on the petitioner to show that her consent was the product of duress). Critically, however, the doctrines of consent and acquiescence are analytically distinct from one another. *Darín v. Olivero - Huffman*, 746 F.3d 1, 14 (1st Cir. 2014). "The consent defense involves the petitioner's conduct prior to the contested removal or retention, while acquiescence addresses whether the petitioner subsequently agreed to or accepted the removal or retention."*Baxter v. Baxter*, 423 F.3d 363, 371 (3rd Cir. 2005). While prior consent is ordinarily a more freeform inquiry into the subjective intent of the parents before removal or retention, subsequent acquiescence requires more formality to show such intent. *Darín*, 746 F.3d at 15–16 (listing "testimony in a judicial proceeding, a convincing written renunciation of rights, or a consistent attitude over a significant period of time" as plausible methods of subsequent acquiescence).

In this case, the Petitioner consented to the Minor Child coming to the United States to reside her permanently. The Parties throughout the duration of their marriage discussed the children coming back to the United States to reside permanently. The Parties sent Brother back in 2022 to complete his last two years of high school. Further, the Parties were going to send him back in 2021, but the Petitioner asked that he stay in Japan for one more year which he did.

When the Respondent came back to the United States with the minor child, it was with the intent that the child would reside her permanently. Petitioner even provided the child's birth certificate and vaccination records so that the child could be enrolled in school in Georgia. Further, the Petitioner told the Respondent that she knew that the Minor Child was better off here. It was only after the Parties disagreed on the filing of the divorce that the Petitioner then changed her mind and asked for the child to come back to Japan for one more year prior to coming to the United States permanently.

### B.  *The Grave Risk of Harm Defense*

The fourth affirmative defense is the "grave risk of harm" defense. The Hague Convention provides that the Court is not bound to return a child where the Respondent can show by clear and convincing evidence that "there is a grave risk that his or her return would expose the child to physical or psychological harm or otherwise place the child in an intolerable situation." Hague Convention Art. 13(b). Respondent asserts that the Minor Child faces a grave risk of harm or the return would otherwise place the child in an intolerable situation if returned to Japan.

A grave risk of harm under the Hague Convention presents a higher burden

than a "best interests" analysis in custody cases. Courts identify a grave risk of harm when, for example, "returning the child to a zone of war, famine, or disease" or "in cases of serious abuse or neglect, or extraordinary emotional dependence, when the court in the country of habitual residence, for whatever reason, may be incapable or unwilling to give the child adequate protection." *Friedrich*, 78 F.3d at 1069 (refusing to accept the grave risk of harm defense where the child would merely have trouble re-adjusting to life in Germany if returned). *Cf. Romero*, 857 Fed. App'x at 586 (finding a grave risk of harm where the left-behind parent beat the abducting parent so severely that she miscarried and broke several bones); *Gomez v. Fuenmayor*, 812 F.3d 1005, 1013 (11th Cir. 2016) (finding a grave risk of harm where the left-behind parent had repeatedly threatened to kill the abducting parent and had threatened the child on at least one occasion); *Taylor v. Taylor*, 502 Fed. App'x 854, 857 (11th Cir. 2012) (finding a grave risk of harm where the left-behind parent and an anonymous third party had repeatedly threatened to kill the abducting parent).

Here, the Respondent will testify regarding the mental and physical abuse inflicted upon the child by the Petitioner. The abuse includes hitting the child, pinching the child, and berating the child. Petitioner threw a shoe at the Minor Child and another time hit him in the head. Petitioner contends that this is in the

form of discipline but the Respondent will testify that it is out of anger. The Brother experienced the same abuse from the Petitioner, and things became critical when the Brother, who became physically bigger than the Petitioner, began to defend himself against Petitioner's violence.

Further, returning the child to Japan will put the child in an intolerable situation. Japanese culture is renowned for its discriminatory and bullying toward mixed race children. The Child and his Brother are mixed race children and have suffered bullying in their schools and in their community. The bullying included being called derogatory terms such as "hafu" and "abubu." The bullying is part of the Japanese hierarchical structure but it is even worse on those that are of mixed race. Further, the Petitioner will not protect the Child from the bullying. When a school bully stole the Child's bicycle, the Petitioner refused to talk to the other child's parents or seek the return of the bicycle.

### III.  CONCLUSION

While the Petitioner has established a *prima facie* case for the return of the Child, the Respondent shows that by a preponderance of the evidence, the Petitioner consented to the minor child residing her permanently. Further, the Respondent can show by clear and convincing evidence that there is a grave risk

of harm to the Child if the Child is returned and the Child will be placed in an intolerable situation if returned to Japan.

Respectfully submitted, this 22nd day of August, 2023,

*/s/ Patricia D. Shewmaker*

PATRICIA D. SHEWMAKER
Georgia Bar No. 455069
Counsel for Respondent
**SHEWMAKER & SHEWMAKER, LLC**
50 Technology Way Pkwy S
Peachtree Corners, Georgia 30092
Office 770-939-1939
pshewmaker@shewmakerlaw.com

## CERTIFICATE OF SERVICE

This is to certify that I have this day served opposing counsel in the foregoing matter with a copy of the within and foregoing RESPONDENT'S TRIAL BRIEF by electronic service in accordance with Local Rules:

Elizabeth C. Helm
kate.helm@nelsonmullins.com
Mark R. Nash
mark.nash@nelsonmullins.com
Edgar A. Neely, IV
edgar.neely@nelsonmullins.com
Attorneys for Petitioner

Respectfully submitted, this 22nd day of August, 2023.

SHEWMAKER & LEWIS, LLC


/s/ Patricia D. Shewmaker
PATRICIA D. SHEWMAKER
Attorney for Respondent
Georgia Bar No. 455069

50 Technology Parkway South
Peachtree Corners, Georgia 30092
770-939-1939  phone
pshewmaker@shewmakerandlewis.com

## CERTIFICATE OF FONT AND POINT SELECTION

I hereby certify that the foregoing was prepared in Times New Roman font in 14 point type in compliance with Local Rule 5.1(C).

/s/ Patricia D. Shewmaker
PATRICIA D. SHEWMAKER
Georgia Bar No. 455069
Counsel for Respondent
**SHEWMAKER & LEWIS, LLC**
50 Technology Way Pkwy S
Peachtree Corners, Georgia 30092
Office 770-939-1939
pshewmaker@shewmakerlaw.com